(Reap. Dec. 9709)

HENSEL, BRUCKMANN & LORBACHER, INC., FOR A/C VERONA DYESTUFFS
v. UNITED STATES

Entry No. 75962.

(Decided May 18, 1960)

*Eugene R. Pickrell* (*George E. Long* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: This appeal to reappraisement has been limited by the parties herein to the item invoiced as "Diamond black PLC," a coal-tar product, which was exported from West Germany on August 7, 1955, and entered at the port of New York on August 18, 1955. The merchandise in question was entered at $1.03 per pound. It was appraised on February 26, 1958, on the basis of American selling price, as defined in section 402 (g) of the Tariff Act of 1930, as amended, and paragraph 28 (c) of the act at $2.057 per pound, less 1 per centum, packed.

It was stipulated by counsel for the respective parties as follows:

1. That the above product was not competitive with a domestic product at any time before July 5, 1955, and was listed as non-competitive in the Supple-

mentary Competitive and Non-Competitive Lists prepared for public distribution by the U.S. Appraiser of Merchandise, New York, New York, in accordance with the provisions of Section 14.5(d) of the Customs Regulations, copies of which are appended hereto as Plaintiff's Collective Exhibit I, and that importations of Diamond Black PLC were uniformly appraised on a non-competitive basis if imported prior to July 5, 1955;

2. That on July 5, 1955, a domestic manufacturer, National Aniline Division of Allied Chemical & Dye Corporation, submitted a sample of Superchrome Black CD to the Chief Chemist of the U.S. Customs Laboratory, at New York, New York, in accordance with Section 14.5 of the Customs Regulations, T.D. 53594, as amended by T.D. 53689;

3. That the said domestic manufacturer on July 5, 1955, and thereafter, freely offered for sale and sold for domestic consumption the said Superchrome Black CD to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market;

4. That the Supplementary Competitive and Non-competitive lists dated November, 1955, for the first time, showed Diamond Black PLC to be competitive (copy of which is appended hereto and marked Plaintiff's Exhibit II).

5. That the Appraiser notified the importer on February 7, 1956, that Diamond Black PLC was competitive with the above named product.

In the determination of the present issue, the following pertinent statutes and customs regulations are noted:

Paragraph 28(c), in effect at the time of importation herein, of the Tariff Act of 1930:

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price (as defined in subdivision (g) of section 402, Title IV), of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (e) of section 402, Title IV.

Section 315(b) of the Tariff Act of 1930, as amended:

No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days* after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of anti-dumping duties.

Section 402(g) of said act reads:

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic

---

*The Treasury Department changed the 30-day period to a 90-day period. T.D. 53093.

consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

Section 501 of said act, as amended, reads:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value. * * *

Section 14.5(d), customs regulations, reads as follows:

(d) The appraiser at New York shall from time to time issue lists of coal-tar products which he believes to be competitive and noncompetitive within the contemplation of sub-paragraphs (c) and (d) of paragraph 27 or 28 of the tariff act, and add articles thereto or remove articles therefrom as investigation shall justify. This list is advisory only and in no manner relieves appraising officers from the duty of independent appraisement required by law. The appraiser shall furnish copies of such lists and amendments thereof to the Customs Information Exchange for circulation among other appraising officers and the public upon request.

The question presented for determination here is whether the provisions of section 315(d) of the Tariff Act of 1930, as amended, are applicable to the involved merchandise, which had been noncompetitive with a domestic product and uniformly appraised on the basis of United States value, which merchandise subsequently became competitive with a domestic product, thus rendering it subject to appraisement on the basis of American selling price. That is, whether, as stated by counsel for the defendant, "appraisements on the basis of United States value and American selling price for articles dutiable under paragraph 28 are concluded on the basis of established and uniform practices."

Plaintiff contends that the subjection of the involved merchandise, heretofore appraised on the basis of United States value, to appraisement on the basis of American selling price is a "charge" against the goods, as contemplated under the provisions of section 315(d), as amended, supra, and that, pursuant to said section, notice of such change of practice or "charge" must be given by publication in the weekly Treasury Decisions, and that said change cannot become effective until 30 days after publication of said notice. As heretofore noted, the domestic product became competitive with the involved importation on July 5, 1955; the product at bar was exported on August 7, 1955; and the importer did not receive notice that the domestic product was competitive until February 7, 1956.

In support of the above contention, counsel for the plaintiff, in his brief, maintains that while the language in section 315(d), *supra*, relative to the imposition of a higher "rate of duty," would seem to have in mind administrative rulings as to the classification of merchandise, the reference in said section to a higher "charge" shows a congressional intent to require notice of a change "in any established practice" which results in a charge on imported merchandise, "that is, any new pecuniary burden resulting from a change in an established, uniform administrative practice." In this connection, counsel for the plaintiff points out that section 315(d), *supra*, as amended, provides that "this provision shall not apply with respect to the imposition of antidumping duties," and counsel refers to the fact that the special dumping duty is no particular "rate" of duty, but that it can vary from one importation to another, depending upon the difference between the foreign market value or fair value and the purchase price. Accordingly, it is contended that the word "charge," as used in the amendment to section 315, was considered by Congress to be broad enough to include dumping duties, although the latter did not refer to "rates" of duty.

Counsel for the plaintiff further points out (plaintiff's brief, pages 9-10) that the additional 10 per centum marking duty under section 304 of the tariff act, as amended, imposed upon articles not properly marked with the name of the country of origin, does not result in a higher "rate" of duty, as the classification of the merchandise in such case has not been changed, but that, nevertheless, such marking duty is a "charge" upon imported merchandise; and that, as indicated in T.D. 45186(9), such a charge results in a change of practice. In this connection, plaintiff's counsel directs our attention to T.D. 45186(9), wherein it was provided that such change of practice with respect to the marking of the name of the country of origin therein involved "is not to be applied to merchandise which is imported or withdrawn from warehouse within a period of 60 days following the date of its publication in the weekly Treasury Decisions."

Plaintiff, in its brief, also makes reference to section 303 of the Tariff Act of 1930, involving so-called "countervailing duties," which concern an additional duty to be assessed when imported merchandise is the subject of a bounty or grant paid or given by the country of origin upon the manufacture or production or export of such merchandise, and contends, in this connection, that the imposition of countervailing duties is also not a change in the rate of duty in such case, but merely the assessment of an additional duty. There appears to be no requirement in said section that importers of merchandise or others be given notice that such duties will be assessed, and the lan-

guage of said section would indicate that countervailing duties, when applicable, are to be assessed immediately upon importation. The plaintiff points out, however, that it has generally been the practice of the Treasury Department to assess countervailing duties where applicable only on merchandise entered for consumption 30 days after publication of a notice that countervailing duties are applicable.

The defendant, with respect to the provision in section 315(d) of the Tariff Act of 1930, as amended, exempting the application of said section in the case of the imposition of antidumping duties, argues that an antidumping duty is a separate, distinct, and additional specific duty "over, above, and beyond" the regular duties usually imposed under the tariff act upon importations and agrees that such a duty is a "charge" as to which the provisions of section 315(d) of the act, as amended, requiring notice of administrative rulings resulting in the position of a "higher rate of duty or charge," would be applicable, except for the provision in said section waiving the requirement of such notice in the case of the imposition of antidumping duties. The Government maintains, however, that, unlike the situation in the case of antidumping duties, Congress did not intend to require affirmative notice for regular duty purposes when such regular duty happens, under the American-selling-price formula, to exceed the amount of duty that would be due under the United States value basis. With this position, I am in accord.

The fact that it has been the practice of the Treasury Department to assess countervailing duties only on merchandise entered for consumption 30 days after publication of a notice that countervailing duties are applicable, has no relationship as far as publication of notice is concerned to the situation in the present case. The countervailing duties imposed under section 303 of the Tariff Act of 1930, as heretofore noted, are additional duties assessed by the collector, other than regular duties, but they are assessed only when a bounty or grant has been given by the foreign Government or someone in the country of exportation and then only when the Secretary of the Treasury makes a determination as to the net amount of the bounty applicable in each instance. In such case, the collector has no recourse other than to impose the amount of the bounty or grant so determined. Under the present circumstances, however, the higher amount of duty here imposed upon the imported merchandise on the basis of American selling price arises by operation of law. The finding of value here made by the appraiser is based upon facts found with respect to this particular importation "at the time of exportation" of the merchandise, and the increase in the amount of duty found applicable under the law cannot be suspended or avoided.

This appraisement on the basis of American selling price which constitutes a "change" from that heretofore made on the basis of United States value is not the "change of practice" contemplated under section 315(d) of the tariff act, as amended, so as to require publication of notice of such so-called change before the imposition of an increase in duty, which increase arises solely and only by reason of the law applicable to certain facts, and upon which appraisement of the involved merchandise at the time of exportation is predicated.

The imposition of additional duties under section 304 of the Tariff Act of 1930, as amended, for failure to properly and legally mark imported merchandise with the name of the country of origin is, in fact, a "charge" against the merchandise. The fact, however, that, in rulings resulting in a change of practice with respect to the marking of imported merchandise, the Treasury Department has issued directives that such rulings shall not apply until the expiration of a certain period of time is no authority for the application to the merchandise at bar of the provisions of section 315(d) of the tariff act, as amended, *supra*, as here contended by the plaintiff. Section 304 has nothing to do with valuation for appraisement purposes or with any of the bases of valuation upon which appraisement of merchandise is predicated.

It appears that the so-called "Supplementary Competitive and Noncompetitive List" dated November 1955 (plaintiff's collective exhibit II), promulgated pursuant to the provisions of section 14.5(d) of the customs regulations, *supra*, was the first such listing of Diamond black PLC as being competitive with the domestic product. Such competitive and noncompetitive lists, issued under the section of the regulations in question, however, are not so issued by virtue of an "established and uniform practice," within the purview of section 315(d), *supra*, since section 14.5(d), *supra*, itself specifically designates such lists or list as advisory only and "in no manner relieves appraising officers from the duty of independent appraisement required by law."

The language of section 315(d), as amended, *supra*, refers to articles "entered for consumption or withdrawn from warehouse for consumption," and provides, as heretofore indicated, that no administrative ruling resulting in the imposition of a higher rate of duty or charge applicable to such articles under an "established and uniform practice" shall be effective prior to the expiration of 30 days after the date of publication in the weekly Treasury Decisions of notice of such ruling. In my opinion, the said section clearly refers to matters of classification only, or to related charges, and not to an increase in duties which might arise by virtue of the appraisement of imported merchandise dutiable under paragraph 28(c) of the Tariff Act of 1930 and where the basis of such appraisement is controlled or predicated

upon the existence or nonexistence at the time of exportation of the merchandise under consideration of a comparable competitive domestic product.

A change from a noncompetitive status to a competitive status, and vice versa, in the case of coal-tar products dutiable under paragraph 28(c), *supra*, can and frequently does take place, as evidenced by the requirements of section 14.5(d) of the customs regulations, *supra*, with respect to the issuance by the appraiser of lists of coal-tar products which he believes to be competitive and noncompetitive. Appraisement of coal-tar products, dutiable under paragraph 28(c), *supra*, must be based upon the American selling price thereof when there exists, at the time of exportation of the imported merchandise, a competitive domestic product. To predicate appraisement of merchandise dutiable under paragraph 28(c), *supra*, upon the length of time such merchandise is competitive or noncompetitive with a domestic product would render the provisions of said paragraph 28(c) a nullity. The length of time one or the other basis of value provided for in paragraph 28(c), *supra*, has existed for a specific product does not constitute such basis of value an "established and uniform practice" so as to make applicable to said product the provisions of section 315(d) of the tariff act, as amended. This appears evident also from the provisions of section 402(c) of the tariff act, as amended, respecting the applicability of "foreign" value to imported merchandise. Merchandise which had for a number of years been properly subject to appraisement on the basis of foreign value might, by reason of conditions subsequently prevailing in the country of exportation, become subject to appraisement on another basis of valuation, for example, "export" value basis in cases where the facts indicate a controlled market for home consumption, no market for domestic consumption in country of exportation, or where the price for the goods becomes lower for home consumption than for export to the United States. In such cases, appraisement on the basis of "export" value would not require notice of change of valuation by reason of the fact that the merchandise had been formerly appraised on the basis of foreign value, nor would appraisement previously made on the latter basis constitute an "established and uniform practice."

In my opinion, there is no basis for plaintiff's contention that section 315(d) of the tariff act, as amended, *supra*, with respect to publication of a "change of practice" has reference to appraisements of merchandise. It appears that all of the notices to which plaintiff herein was entitled under the law were given, viz, section 501 of the Tariff Act of 1930, as amended, and section 14.5(d) of the customs

regulations, *supra*. Section 501 of the tariff act, so far as pertinent, reads as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value.

On the record and the law applicable in this case, I find and hold that appraisement of the involved merchandise on the basis of American selling price, without publication of notice such as that required under section 315(d) of the tariff act, as amended, *supra*, was proper.

Based upon the foregoing consideration, I find as facts:

1. That the imported merchandise consists of certain "Diamond black PLC," exported from West Germany on August 7, 1955, a coaltar product dutiable under paragraph 28(c) of the Tariff Act of 1930.

2. That the involved merchandise was entered at $1.03 per pound and was appraised on the basis of American selling price, section 402(g) of the Tariff Act of 1930, at $2.057 per pound, less 1 per centum, packed

3. That from July 1953 to July 5, 1955, the imported merchandise had been appraised on the basis of United States value, section 402(g) of said tariff act, as amended, as a noncompetitive coal-tar dye provided for in paragraph 28(c), *supra*.

4. That, on and after July 5, 1955, a domestic manufacturer freely offered for sale and sold for domestic consumption a product known as "Superchrome Black CD," which product was competitive with the imported merchandise, to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market.

5. That no notice of change with respect to appraisement of the imported merchandise on the basis of American selling price from that previously made on the basis of United States value for said "Diamond black PLC" was published in the weekly Treasury Decisions in accordance with such a change of practice, as is contemplated under the provisions of section 315(d) of the Tariff Act of 1930, as amended, with respect to administrative rulings resulting in the imposition of a higher "rate of duty or charge" than the Secretary of the Treasury shall find to have been applicable to imported merchandise under "an established and uniform practice."

I conclude as a matter of law:

1. That section 315(d) of the Tariff Act of 1930, as amended, does not require publication in the weekly Treasury Decisions whenever there is a change in the basis of appraisement in reappraisement proceedings.

2. That there was no "change of practice," as contemplated in said section 315(d) applicable to the imported merchandise.

3. That the increased duty incurred herein resulting from a change from appraisement of the imported merchandise on the basis of United States value to appraisement on the basis of the American selling price of a competitive domestic product is not a "charge" within the meaning of section 315(d) of the Tariff Act of 1930, as amended.

4. That no notice pursuant to section 315(d), *supra*, was required to be given the importer by reason of the appraisement of the imported merchandise on the basis of American selling price.

5. That American selling price, as that value is defined in section 402(g) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise here involved, and that such value is the appraised value as set forth in finding of fact No. 2.