(A.R.D. 130)

HENSEL, BRUCKMANN & LORBACHER, INC., FOR A/C VERONA DYESTUFFS
*v.* UNITED STATES

Entry No. 75962.

Second Division, Appellate Term

(Decided April 10, 1961)

*Eugene R. Pickrell* (*George E. Long* of counsel) for the appellant.
*William H. Orrick, Jr.,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment in a reappraisement proceeding sustaining the appraised value of an importation of a coal-tar dye invoiced as Diamond black PLC (44 Cust. Ct. 722, Reap. Dec. 9709). This merchandise, which was exported from West Germany on August 7, 1955, was entered at the port of New York on August 18, 1955, at $1.03 per pound. It was appraised on the basis of American selling price, as defined in section 402(g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, by virtue of the provisions of paragraph 28(c) of said tariff act, at $2.057 per pound, less 1 per centum, packed.

The case was submitted for decision by the trial judge upon a stipulation of facts, which recites the following:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the plaintiff and the Assistant Attorney General for the United States, that the appeal is limited to the item invoiced as Diamond Black PLC, exported August 7, 1955, from West Germany and entered at the Port of New York, on August 19, 1955, a coal-tar product, which was appraised on February 26, 1958, upon the basis of American selling price of $2.057 per lb., less 1% packed, in accordance with the provisions of Section 402(g) and Paragraph 28 of the Tariff Act of 1930, as amended.

IT IS FURTHER STIPULATED AND AGREED:

1. That the above product was not competitive with a domestic product at any time before July 5, 1955, and was listed as non-competitive in the Supplementary Competitive and Non-Competitive Lists prepared for public distribution by the U.S. Appraiser of Merchandise, New York, New York, in accordance with the provisions of Section 14.5(d) of the Customs Regulations, copies of which are appended hereto as Plaintiff's Collective Exhibit 1, and that importations of Diamond Black PLC were uniformly appraised on a non-competitive basis if imported prior to July 5, 1955;

2. That on July 5, 1955, a domestic manufacturer, National Aniline Division of Allied Chemical & Dye Corporation, submitted a sample of Superchrome Black CD to the Chief Chemist of the U.S. Customs Laboratory, at New York, New York, in accordance with Section 14.5 of the Customs Regulations, T.D. 53594, as amended by T.D. 53689;

3. That the said domestic manufacturer on July 5, 1955, and thereafter, freely offered for sale and sold for domestic consumption the said Superchrome Black CD to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market;

4. That the Supplementary Competitive and Non-competitive lists dated November, 1955, for the first time, showed Diamond Black PLC to be competitive (copy of which is appended hereto and marked Plaintiff's Exhibit II).

5. That the Appraiser notified the importer on February 7, 1956, that Diamond Black PLC was competitive with the above named product.

IT IS FURTHER STIPULATED AND AGREED that if the Court is of the opinion that the proper basis of appraisement is the American selling price, that the appraised value is correct, and that if the proper basis of appraisement is United States value, the United States value at the time of exportation was $1.0822 per pound, net packed.

\* \* \* \* \* \* \*

The provisions of law to which the stipulation adverts, as well as other provisions relevant to the issues herein, read as follows:

Paragraph 28(c), *supra*:

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price (as defined in subdivision (g) of section 402, Title IV), of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (e) of section 402, Title IV.

Section 402(e), *supra,* as amended by the Customs Administrative Act of 1938:

(e)  UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Section 402(g), *supra*:

(g)  AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities at the time of exportation of the imported article.

Section 315(d), as amended by the Customs Simplification Act of 1953:

(d)  No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days* after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

*This period of time was extended to 90 days by ruling of the Treasury Department— T.D. 53093.

Section 14.5 of the Customs Regulations:

(d)  The appraiser at New York shall from time to time issue lists of coaltar products which he believes to be competitive and noncompetitive within the contemplation of sub-paragraphs (c) and (d) of paragraph 27 or 28 of the tariff act, and add articles thereto or remove articles therefrom as investigation shall justify. This list is advisory only and in no manner relieves appraising officers from the duty of independent appraisement required by law. The appraiser shall furnish copies of such lists and amendments thereof to the Customs Information Exchange for circulation among other appraising officers and the public upon request.

It is the position of appellant here, as it was before the trial judge, that the provisions of section 315(d), *supra,* operate to pre-

vent the appraisement of the instant merchandise on the basis of American selling price, even though it is conceded that a competitive domestic product was freely offered for sale to all purchasers at or about the date of exportation. The reason assigned is that the established and uniform practice of appraising Diamond black PLC in accordance with its United States value (section 402(e) of the Tariff Act of 1930) was changed without the requisite notice contemplated by said section. In support of this thesis, appellant urges that the increase in duty resulting from the increase in value constitutes a charge not previously applicable to said merchandise which may not be exacted without prior notice of a change in practice.

Appellee counters that the appraiser's return of the value of imported merchandise is neither governed by, nor subject to, the provisions of said section 315(d). It is argued, in sustance, that the appraiser's duty in finding value is measured solely by the scope of the statutory definitions thereof in section 402, which, regardless of the basis selected (cost of production excepted), require a determination predicated upon conditions existing at or about the time of exportation of the merchandise undergoing appraisement. Since the statute fixes the controlling period, it is irrelevant to consider past practices, notwithstanding that the *status quo* may have remained unchanged over a long period of time. In other words, it is urged that there can be no uniform and established practice with respect to appraisement.

The trial court upheld the Government's contentions, stating:

* * * This appraisement on the basis of American selling price which constitutes a "change" from that heretofore made on the basis of United States value is not the "change of practice" contemplated under section 315(d) of the tariff act, as amended, so as to require publication of notice of such so-called change before the imposition of an increase in duty, which increase arises solely and only by reason of the law applicable to certain facts, and upon which appraisement of the involved merchandise at the time of exportation is predicated.

* * * * * * *

* * * The length of time one or the other basis of value provided for in paragraph 28(c), *supra*, has existed for a specific product does not constitute such basis of value an "established and uniform practice" so as to make applicable to said product the provisions of section 315(d) of the tariff act, as amended.

We are in accord with the conclusions reached by the trial court.

Under the structure of the Tariff Act of 1930 by which imported merchandise is appraised and classified for the assessment of duty, it is the function of the appraiser to determine the value of the importation. In the case of coal-tar products, the statute furnishes him with explicit directions for making that finding. He is required to ascer-

tain the American selling price, as defined in section 402(g), *supra*, of "any similar competitive article manufactured or produced in the United States." He is authorized to substitute United States value, if, but only if, "there is no similar competitive article manufactured or produced in the United States."

When the appraiser turns his attention to the definition of American selling price, he is further required to determine whether the competitive domestic article is freely offered for sale to all purchasers in the ordinary course of trade and in the usual wholesale quantities, etc., "at the time of exportation of the imported article." This is the only period which section 402(g) authorizes him to consider.

In the face of a showing that a competitive domestic product was so freely offered at the time of exportation of the imported article, which is exactly the case here, the combined provisions of paragraph 28(c) and section 402(g) operate simultaneously to direct a return of value predicated upon American selling price and to eliminate United States value as a potential basis of appraisement. This being so, it is immaterial that prior to the time of exportation the absence of a competitive domestic product had permitted the alternative basis provided for in said paragraph 28(c) to be invoked for a sustained period. Indeed, the statutory mandate to consider the conditions under which a competitive domestic article is marketed *at the time of exportation* of the imported product implicitly negates the concept of an established and uniform practice.

A purely fortuitous circumstance, quite without legal significance affecting the appraisement of merchandise, was the fact that for upwards of 2 years no American coal-tar product was competitive with the imported Diamond black PLC, and that, therefore, such material was appraised on the basis of United States value. The appraiser's action in this respect reflected the prevailing market conditions, but it was in no sense an established and uniform course pursued as the result of a definitive administrative practice. It was a series of independent findings reached anew for each prior importation of this product to meet conditions then existing, and consistent solely by reason of the continued absence from the market of a competitive domestic coal-tar product. To say, however, that the appraiser was required to follow his prior "consistent" practice of using United States value as the basis of appraisement until such time as due notice of change in practice has been furnished is to ignore the explicit precepts of the two applicable statutory provisions.

It was the fact that, on July 5, 1955, the domestic product became competitive, not the publication of the appraiser's list of November 1955, which occasioned the appraisement of the merchandise at be on the basis of American selling price. By the terms of the appli-

cable regulation, section 14.5(d), such lists are advisory only and do not relieve the appraisers at the various ports of their duty to appraise in accordance with conditions existing at the time made relevant by the statutory definitions of the respective bases of value.

The "change of practice" which occurred in this case, if it may properly be so termed, was not the result of any administrative ruling of the Treasury Department. Nor did the Secretary find, as required by the change of practice provision, that theretofore there had existed an established and uniform practice. In the absence of these two controlling conditions, the provisions of section 315(d) are inapplicable, and, therefore, no notice of change of practice within the contemplation of said section was necessary.

Counsel for appellant, nevertheless, seeks to bring the facts of this case within the framework of a pattern wrought by the Secretary of the Treasury in issuing change of practice rulings with respect to the countervailing duties and marking provisions (sections 303 and 304, as amended) of the Tariff Act of 1930, particularly in view of the expressed exception of antidumping duties from the provisions of section 315(d). It is argued that the imposition of countervailing duties and the additional duties for failing to properly mark the country of origin on imported merchandise constitutes a charge, within the meaning of said section 315(d), similar to the charge resulting from the higher appraised value in the instant case, and that since the Secretary of the Treasury issues change of practice notices with respect to countervailing duties and marking, he should be required to issue such notice in the present situation.

The difficulty with this position lies in the fact that these special duties must first be initiated by Treasury Department rulings. The Secretary of the Treasury is required to determine or estimate the net amount of bounty or grant against which countervailing duties are assessed. He is also authorized to prescribe regulations for the proper marking of imported merchandise. His action in either respect results in an established and uniform practice, and, therefore, notice of change of practice is necessary within the provisions of said section 315(d). In the case of appraisement of imported coal-tar products, the appraiser acts upon his own determination, based upon the existence or nonexistence of a similar competitive domestic article at the time of exportation. Under those circumstances, whether or not the basis of value he adopts remains the same for a given product for any length of time, his actions do not result in any established practice, and, consequently, when he changes from one basis of value to another, no change of practice notice is required.

We find no merit in the contention of appellant that a change of practice notice antedating the instant appraisement on the basis of

American selling price was necessary. The decision and judgment of the trial court sustaining the appraiser's return of value herein are, therefore, affirmed, and the findings of fact and conclusions of law set forth in said decision are herein adopted.

Judgment will be entered accordingly.